UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**REBA DANASTORG,**                                         Chapter 13
    Debtor                                                Case No. 07-12948-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are the "Objection to Confirmation of Debtor's Amended Chapter 13 Plan by Secured Creditor," filed by the Whiting Lane Condominium Trust (the "Condo Trust") and the Debtor's Objection to the Proof of Claim filed by the Condo Trust. The Court heard the matters on December 13, 2007 and took them under advisement. The Condo Trust and the Debtor filed briefs by the January 21, 2008 and February 7, 2008 deadlines imposed by the Court.

**II. BACKGROUND**

Reba Danastorg (the "Debtor") filed a Chapter 13 petition on May 11, 2007. She filed her Schedules and Chapter 13 plan on May 29, 2007. On Schedule A-Real Property, she listed an ownership interest in property she identified as 3 Whiting Road, Hingham (the "Property"). She valued the Property at $733,000. On Schedule D-Creditors Holding

1

Secured Claims, she listed "Homecome Fin" as the holder of a mortgage on the Property in the sum of $476,250. On Scheduled F-Creditors Holding Unsecured Nonpriority Claims, she listed the Condo Trust with a claim in the sum of $6,967.12 for "2006-2007 condo fees."

On June 26, 2007, the Debtor filed a First Amended Chapter 13 Plan. Although she did not amend Schedule D, in her amended plan, in Section I, captioned "Secured Claims," the Debtor listed the Condo Trust and proposed to pay it "priority condo fees" in the sum of $1,440 and a "non priority condo fee" in the sum of $2,722, as well as mortgage arrears in the sum of $97,252.80.

On September 21, 2007, the Condo Trust filed its objection to confirmation of the Debtor's amended Chapter 13 plan. Referencing its proof of claim and attaching the same accounting that it attached to its proof of claim to its objection, the Condo Trust stated that it was owed $7,267 and that the Debtor misstated the prepetition arrearage due for unpaid condominium fees and attorneys' fees, all of which it claimed were secured by the Property.

On October 22, 2007, the Debtor filed an objection to the Condo Trust's proof of claim. The Debtor complained that the Condo Trust filed its proof of claim without proper supporting documentation, including 1) prepetition condo fees paid by the Debtor; 2) an itemization of the bill for legal fees; and 3) proof that the Condo Trust followed the notice requirements set forth in Mass. Gen. Laws ch. 183A, § 6 in order to perfect its lien. The Debtor also objected to the proof of claim, arguing that pursuant to 11 U.S.C. § 523(a)(16), "the debtor is not obligated to pay any prepetition condominium association fees, late fees,

costs or attorney's fees. . . ." Although the Debtor stated that the Condo Trust may have a priority lien for postpetition delinquent "common expenses," it asserted that the lien does not include amounts attributable to special assessments, late charges, fines, penalties, and interest assessed by the Condo Trust. It added that the Condo Trust's failure to send the Debtor's first mortgagee notice of the 60 day delinquency of common expenses affects the priority of the amount it may be able to collect.

The Condo Trust filed an Opposition to the Debtor's Objection to its proof of claim. It attached copies of two letters that it sent by first class, certified mail to the Debtor, "Homecomings Financial," Robert McCarthy, Trustee of the McCarthy Realty Trust, and Lee S. Kaplan. In the first letter, dated August 25, 2006, the Condo Trust, through its attorney, notified the Debtor that she was delinquent in the payment of condominium fees for the months of April, May June, July, and August of 2006 in the amount of $1,200. Additionally, it claimed it was entitled to "late fees for the period April 2006 to the present in the amount of $125; May 2006 in the amount of $1000, June 2006 in the amount of $75.00, July 2006 in the amount of $50.00 and August 2006 in the amount of $25.00." It observed that "[t]hese assessments are for the total amount due and owing of $1,575.00." The Condo Trust also asserted that it was entitled to attorney's fees and costs totaling $285.36. It demanded payment within 30 days.

In the second letter, dated November 1, 2006, which the Condo Trust sent by first class, certified mail to the same parties identified above, the Condo Trust notified the Debtor that it intended to institute an action to collect amounts due and owing and to

3

enforce its lien because the delinquency had not been cured. It stated that $1,920 was due for common expenses for eight months beginning in April 2006. It also sought late charges of $875 and collection costs of $678.92.[1] The Condo Trust advised the Debtor that she should "be aware that, should legal action be necessary, the Trust's lien will have priority over the mortgage to the extent of the common charges due for up to six months, plus collection cost and attorney fees [sic]."

### III. APPLICABLE LAW

The Debtor argues that prepetition condominium fees are dischargeable under section 523(a)(16). That section excepts from discharge "any debt -

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but *nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief* in a pending or subsequent bankruptcy case . . . .

11 U.S.C. § 523(a)(16)(emphasis supplied). Thus, section 523(a)(16) specifically excepts from discharge in a Chapter 7 case, *postpetition* condominium fees. Such postpetition fees would not normally be discharged as the Chapter 7 discharge pertains to "debts that arose

---

[1] The Condo Trust listed late charges for "April 2006-October 2006 @ $25/month." Of course, $25 multiplied by seven does not equal $875. The Court is unable to explain this error.

4

before the date of the order for relief."[2]

In Chapter 13, section 1328 of the Bankruptcy Code governs the discharge. It provides that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt - (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." 11 U.S.C. § 1328(a). Section 1328 does not mention section 523(a)(16), and the Court finds that section 523(a)(16) is inapplicable to Chapter 13 cases, where the Debtor has an ongoing duty to pay postpetition obligations, such as utilities and condominium fees, as they come due. Moreover, section 523(a)(16) is not relevant because it pertains to unsecured debts, and the Condo Trust, as discussed more fully below, has a statutory lien against the Property which the Debtor must address in accordance with the provisions of Chapter 13.

The legislature of the Commonwealth has provided a statutory lien for common expenses and other obligations owed to condominium associations. Section 6(a) of Mass.

---

[2] Section 727(b) provides:

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. §727(b).

Gen. Laws ch. 183(a) provides in relevant part:

> (a)(i) Except as provided in clause (ii) herein, all common expenses must be assessed against all units in accordance with their respective percentages of undivided interest in the common areas and facilities. *The organization of unit owners shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due.* Common expense assessments must be made at least annually, based on a budget adopted at least annually in accordance with the master deed, trust, or by-laws.
>
> (ii) *If any expense is incurred by the organization of unit owners as a result of the unit owner's failure to abide by the requirements of this chapter or the requirements of the master deed, trust, by-laws, restrictions, rules or regulations*, or by the misconduct of any unit owner, or his family members, tenants, or invitees, *the organization of unit owners may assess that expense exclusively against the unit owner and such assessment shall constitute a lien against that unit from the time the assessment is due, and such assessment shall be enforceable as a common expense assessment under this chapter.* Notwithstanding the provisions of clause (1), the organization of unit owners may assess the cost of maintaining, repairing or replacing a limited common area and facility, solely to the owner of the unit to which a limited common area and facility is appurtenant, allocated, or designated, and such assessment shall be enforceable as a common expense assessment under this chapter; in the alternative, the organization of unit owners may require the owner of the unit to which a limited common area and facility is appurtenant, allocated, or designated to maintain, repair, or replace such limited common area and facility without the intervention of the organization of unit owners. . . . *The organization of unit owners may also assess any fees, attorneys' fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest charged pursuant to this chapter against the unit owner and such assessment shall constitute a lien against the unit from the time the assessment is due, and shall be enforceable as common expense assessments under this chapter.*
>
> (b) The unit owner shall be personally liable for all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the organization of unit owners and all costs of collection including attorneys' fees, costs, and charges.
>
> c) When any portion of the unit owner's share of the common expenses has been delinquent for at least sixty days subsequent to April 1, 1993, the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner by certified and first class mail. The

organization of unit owners shall also send a notice stating the amount of the delinquency to the first mortgagee by certified and first class mail, provided, that the first mortgagee has informed the organization of unit owners of its name and mailing address. Furthermore, *thirty days prior to the filing of an action by the organization of unit owners to enforce its lien for delinquent common expenses, the organization of unit owners shall send a notice stating its intention to file said action to the first mortgagee by certified and first class mail,* provided that the first mortgagee has informed the organization of unit owners of its name and mailing address. . . .

A lien under this section shall be enforced in the manner provided in sections five and five A of chapter two hundred and fifty-four. Such lien is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit. *This lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments based on the budget adopted pursuant to subsection (a) above which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien,* provided however, that the amount of attorneys' fees incurred prior to January 1, 1993 which shall be prior to the mortgage described in clause (ii) above shall be limited to no more than two thousand and five hundred dollars, and provided further, that payment of the assessments with respect to such six month period, and to the extent of any costs or reasonable attorneys'¹ fees incurred in said action, shall serve to discharge such lien to the extent that such lien is prior to such mortgages described in clause (ii) above. *The priority amount shall not include any amounts attributable to special assessments, late charges, fines, penalties, and interest assessed by the organization of unit owners*. The failure of the organization of unit owners to send the first mortgagee either the notice of sixty day delinquency of common expenses, as described above, or the thirty day notice of intent to file an action to enforce the lien for delinquent common expenses, as described above, shall not affect the priority lien of the organization of unit owners for up to six months' common expenses, but the priority amount shall not include any costs or attorneys' fees incurred in the action to enforce the lien. . . . *Recording of the master deed constitutes record notice and perfection of this lien*; no further recordation of any claim of lien for assessment under this section is required.

Neither this section nor anything contained in sections five or five A of

7

> chapter two hundred and fifty-four shall be deemed to prohibit actions to recover sums for which this subsection creates a lien or to prohibit an organization of unit owners from taking a deed in lieu of enforcement of the lien created by this section. . . .

Mass. Gen. Laws ch. 183A, § 6.

Section five of chapter 254 provides:

> A . . . lien established under section six of chapter one hundred and eighty-three A . . . shall be enforced by a civil action brought in the superior court for the county where such land lies or in the district court in the judicial district where such land lies. *The plaintiff shall bring his action in his own behalf and in behalf of all other persons in interest who shall become parties. An attested copy of the complaint, which shall contain a brief description of the property sufficient to identify it, and a statement of the amount due, shall be filed in the registry of deeds and recorded as provided in section nine within thirty days of the commencement of the action, or such lien shall be dissolved.* All other parties in interest may appear and have their rights determined in such action, and at any time before entry of final judgment, upon the suggestion of any party in interest that any other person is or may be interested in the action, or of its own motion, the court may summon such person to appear in such cause on or before a day certain or be forever barred from any rights thereunder. . . .

Mass. Gen. Laws ch. 254, § 5. Neither the Debtor nor the Condo Trust represented that the Condo Trust commenced an action against the Debtor in the Superior Court. Accordingly, the record is devoid of any information that would warrant a finding that the Condo Trust's statutory lien was dissolved by operation of law.

### IV. DISCUSSION

The Court finds, based upon the plain language of Mass. Gen. Laws ch. 183A, § 6(a), that the Condo Trust has a statutory lien with respect to all common expenses, fees,

8

attorneys' fees, charges, late charges, and fines.[3] The Court further finds that a portion of the Condo Trust's lien, pursuant to the second paragraph of section 6(c), is entitled to priority over all other liens except 1) liens and encumbrances recorded before the recordation of the master deed, 2) a first mortgage recorded before the date of the assessment sought to be enforced became delinquent, and 3) liens for real estate taxes and other municipal assessments.  Based upon the existing record, the Condo Trust has a statutory lien entitled to priority over the first mortgage in the amount of $1,440 for common expenses *plus* "any costs and reasonable attorneys' fees incurred in the action to enforce the lien," *but excluding* "amounts attributable to special assessments, late charges, fines, penalties , and interest assessed by the organization of unit owners," assuming that the Debtor's mortgage with Homecomings Financial preceded the delinquency. Although the full extent of the Condo Trust's lien is not entitled to priority over the mortgage debt and tax liens, it remains a lien against the property subordinate to real estate taxes and the first mortgage; it is not discharged except in accordance with the provisions of a confirmed plan and Chapter 13 of the Bankruptcy Code.

---

[3] The Court is unaware of whether the Condo Trust commenced an action against the Debtor to enforce its lien before she filed her Chapter 13 case. If it has done so and failed to record a copy of the complaint, its lien, at least to the extent of the amount set forth in the complaint, would be dissolved. *See* Mass. Gen. Laws 254, § 5. If it complied with the statute, the extent of its lien could be augmented by costs of collection and enforcement, court costs, and interest charged. *See* Mass. Gen. Laws ch. 183A, § 6(a)(ii).

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining the Condo Trust's objection to the Debtor's First Amended Chapter 13 Plan and overruling the Debtor's objection to the Condo Trust's proof of claim.

By the Court,

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: February 22, 2008
cc: Lawrence S. Levin, Esq., Richard S. Ravosa, Esq., Chapter 13 Trustee